917 P.2d 706

**The CITY OF TUCSON, Appellee,**

**v.**

**Tracy WOLFE and Sugaree Sands, Appellants.**

Nos. 2 CA–CR 94–0229, 2 CA–CR 94–0230.

Court of Appeals of Arizona, Division 2, Department B.

July 25, 1995.

As Corrected Aug. 7, 1995.

Review Denied April 23, 1996.

564

Thomas J. Berning, Tucson City Atty. by R. William Call and William F. Mills, Tucson, for appellee.

Hirsh, Davis, Walker & Piccarreta, P.C. by Jefferson Keenan and Michael L. Piccarreta, Tucson, for appellants.

## OPINION

ESPINOSA, Presiding Judge.

Appellants Sugaree Sands and Tracy Wolfe appeal their misdemeanor convictions for indecent exposure under Tucson City Ordinance § 11–25.1. Both women were employed as dancers in a nightclub that featured exotic entertainment when they each received a "clothing requirement violation" citation from the Tucson Police after they removed opaque material covering the nipple and areola portions of their breasts.

Before trial, Sands and Wolfe both filed motions to dismiss on the ground that the ordinance violates the equal protection guarantees of the Arizona and United States constitutions because it permitted their prosecution for behavior that would not be criminal if they were men. The motions were heard jointly in city court and were denied. Sands and Wolfe thereafter stipulated to the facts contained in the police report and were found guilty of violating § 11–25.1. They appealed to the superior court. Their cases were consolidated and after oral argument the superior court denied the appeal and remanded the

matter to the city court. This appeal followed.

The sole issue presented by appellants is whether Tucson City Ordinance § 11–25.1 violates the state and federal guarantees of equal protection under the law because it prohibits females, but not males, from exposing the nipple and areola regions of their breasts. Section 11–25.1 provides:

Any female entertaining or performing any dance or in any play, exhibition, show or other entertainment, or any female serving food or spirituous liquors as defined by A.R.S. title 4, chapter 1, article 1, as amended, in a restaurant, nightclub, bar, cabaret, tavern, tap room, theater, or in a private, fraternal, social, golf or country club, as defined by A.R.S. title 4, chapter 1, article 1, as amended, or in any public place, who appears clothed, costumed, unclothed or uncostumed in such a manner that the nipple and the aureola [sic] (the more darkly pigmented portion of the breast encircling the nipple) are not firmly covered by a fully opaque material, is guilty of a misdemeanor.

Because this ordinance creates a different standard of conduct for each gender, to withstand constitutional challenge the city must show (1) that the ordinance serves an important governmental objective and (2) that the gender-based classification is substantially related to the achievement of that objective. *Mississippi University for Women v. Hogan*, 458 U.S. 718, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982); *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976).

The city asserts that the purpose of this regulation is to help maintain a decent society and to protect public decorum, sensibilities and morals. Appellants do not challenge the importance of these objectives, which have been recognized as legitimate and important legislative goals. *See Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); *United States v. Biocic*, 928 F.2d 112 (4th Cir.1991); *Dumas v. City of Dallas*, 648 F.Supp. 1061 (N.D.Tex. 1986), *vacated in part on other grounds*, *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990); *State ex rel. DeConcini v. Gatewood*, 10 Ariz.App.

274, 458 P.2d 368 (1969); *City of Portland v. Gatewood*, 76 Or.App. 74, 708 P.2d 615 (1985). Appellants contend, however, that the city failed to satisfy the second part of the test because it did not show "how the classification at issue serves that purpose and how it serves the purpose better than would a gender-neutral law." (Emphasis in original.)

■ At the outset we note that, appellants' contrary assertions notwithstanding, the substantial relationship prong of the applicable equal protection analysis does not impose upon the city the burden of showing that the ordinance serves the stated purpose better than would a gender-neutral law. *Michael M. v. Superior Court of Sonoma County*, 450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981). "The relevant inquiry ... is not whether the statute is drawn as precisely as it might have been, but whether the line chosen by the [legislative body] is within constitutional limitations." *Id.* at 473, 101 S.Ct. at 1206, 67 L.Ed.2d at 445. Where the objective is legitimate and important, as conceded here, all the Constitution requires is a showing by the city that "the requisite direct, substantial relationship between objective and means is present." *Mississippi University for Women*, 458 U.S. at 725, 102 S.Ct. at 3337, 73 L.Ed.2d at 1099.

When equal protection is in issue, the law recognizes that there are certain narrow circumstances where men and women are not similarly situated. "[I]n these circumstances a gender classification based on clear differences between the sexes is not invidious, and a legislative classification realistically based upon those differences is not unconstitutional." *Michael M.*, 450 U.S. at 478, 101 S.Ct. at 1209, 67 L.Ed.2d at 448 (Stewart, J., concurring).

Appellants argue, however, that physical differences alone cannot justify different treatment based on gender, citing *Godfrey v.*

*Industrial Commission of Arizona*, 124 Ariz. 153, 602 P.2d 821 (App.1979). That case is inapposite. In *Godfrey*, Division One of this court said that disqualifying women from entitlement to workers' compensation disability benefits solely on the basis of pregnancy constituted unlawful discrimination based on gender. The ordinance at issue here, however, is not based exclusively on the differences in physical characteristics between men and women, but rather appears rooted in societal norms and perceptions associated with these differences. More importantly, the challenged restriction lacks characteristics that make gender classifications invidious, neither disadvantaging women in any significant way, unlike the disqualification in *Godfrey*, nor demeaning their abilities or social status. *See Manufacturers Hanover Trust Co. v. U.S.*, 775 F.2d 459 (2d Cir.1985), *cert. denied*, 475 U.S. 1095, 106 S.Ct. 1490, 89 L.Ed.2d 892 (1986). Nor does the ordinance infringe on compelling rights as in many of the cases upon which appellants rely. *See e.g., J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (right to serve on jury); *Mississippi University for Women* (right to pursue profession and earn livelihood); *Kirchberg v. Feenstra*, 450 U.S. 455, 101 S.Ct. 1195, 67 L.Ed.2d 428 (1981) (right to manage and dispose of community property); *Orr v. Orr*, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979) (allocation of spousal support responsibilities); *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) (right to receive military dependents' benefits). *See also State v. Western*, 168 Ariz. 169, 812 P.2d 987 (1991) (freedom of expression).

Appellants also contend that any underlying rationale based on sexual association or connotation is out-dated and should be disregarded as reflecting archaic and sexist stereotypes. Appellants cite certain reports and case studies which they refer to as scientific data to support their claim.[1] Apparently,

---

1. According to appellants' briefs on appeal and pleadings below, the "scientific data" consists of conclusions of a random study on opposite-sex preferences by Wildman, "Note on Males' and Females' Preference for Opposite–Sex Body Parts, Bust Sizes and Bust Revealing Clothing," 38 *Psychological Reports* 485–86 (1976), studies

on both male and female sexuality, by A.C. Kinsey, et al., *Sexual Behavior in the Human Male* (1948), *Sexual Behavior in the Human Female* (1953), and an excerpt from an article examining the erotic potential of men's breasts by J. Morin, "Male Breast: Overlooked Erogenous Zone," Medical Aspects of Human Sexuality, March

this material was never provided to the trial court below, and its consideration on appeal is therefore questionable. In any event, we need not attempt to ascertain its validity or relevancy here. As the Supreme Court has pointed out, "proving broad sociological propositions by statistics is a dubious business, and one that inevitably is in tension with the normative philosophy that underlies the Equal Protection Clause." *Craig,* 429 U.S. at 204, 97 S.Ct. at 460, 50 L.Ed.2d at 411. Moreover, the reports advanced by appellants do not in any way address the legitimate question of current social norms and public perception regarding a concededly difficult-to-pinpoint standard of decency.

■ Other jurisdictions considering equal protection challenges to similar legislation have rejected them. *See Biocic; Craft v. Hodel,* 683 F.Supp. 289 (D.Mass.1988); *State v. Turner,* 382 N.W.2d 252 (Minn.App.1986); *City of Seattle v. Buchanan,* 90 Wash.2d 584, 584 P.2d 918 (1978). *Cf. SDJ, Inc. v. City of Houston,* 837 F.2d 1268 (5th Cir.1988), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989); *Moore v. City of Coffeyville,* No. 93–1092–PFK, 1993 WL 246094 (D.Kan. June 16, 1993); *Tolbert v. City of Memphis,* 568 F.Supp. 1285 (W.D.Tenn. 1983); *but see People v. Santorelli,* 80 N.Y.2d 875, 600 N.E.2d 232, 587 N.Y.S.2d 601 (1992) (Titone, J., concurring). Likewise, we believe that the ordinance at issue here encompasses more than mere "sexual stereotyping" and, as both courts below held, given the community standard for "decency" expressed by the community's legislatures both local and statewide,[2] the ordinance "is substantially related to an important governmental interest in regulating the public decency and order." *See Paris Adult Theatre.*

As applied to female nightclub entertainers and servers, the additional clothing requirement of § 11–25.1 is narrowly drawn and not unduly burdensome, mandating only that those females cover the nipple and areola portions of their breasts. While acknowledging that this requirement may not achieve the intended goal perfectly, we conclude that under the applicable standard of review it does not violate the equal protection clauses of either the Arizona or the United States constitutions.

The judgment of the trial court is affirmed.

DRUKE, C.J., and HATHAWAY, J., concur.

---

1986, at 85. Appellants assert that these studies show that the male and female breasts have the same erotic potential and that they are used equally by both sexes to provide sexual stimulation.

**2.** The state statute governing indecent exposure also restricts only females from exposing their nipple or areola. A.R.S. § 13–1402.