United States Court of Appeals

For the Eighth Circuit

_____

No. 17-3467

_____

Free the Nipple - Springfield Residents Promoting Equality; Jessica Lawson;
Amber Hutchinson

*Plaintiffs - Appellants*

v.

City of Springfield, Missouri

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: February 13, 2019
Filed: May 6, 2019
[Published]

_____

Before SMITH, Chief Judge, BENTON and STRAS, Circuit Judges.

_____

PER CURIAM.

Free the Nipple - Springfield Residents Promoting Equality and two of its members, Jessica Lawson and Amber Hutchison (collectively FTN), sued the City of Springfield, alleging its indecent exposure ordinance violates the Fourteenth

Amendment's Equal Protection Clause. The district court[1] granted summary judgment to the City. *Free the Nipple - Springfield Residents Promoting Equal. v. City of Springfield*, 2017 WL 6815041 (W.D. Mo. Oct. 4, 2017). FTN appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

In August 2015, Lawson and Hutchison organized a protest to raise awareness about Springfield's indecent exposure ordinance. The protestors were topless, except for opaque black tape covering their nipples. A month later, the City Council enacted a stricter indecent exposure ordinance. FTN sued the City to overturn it. In March 2016, the City repealed the September 2015 ordinance and replaced it with this ordinance:

> (a) No person shall engage in or commit any act of indecent exposure or conduct in place open to public view.
>
> (b) "Indecent exposure or conduct" shall include:
>
>> (1) The exposure of the male or female genitals, pubic area, or the female breast with less than a fully opaque covering of any part of the areola and nipple, or the showing of the covered male genitals in a discernibly turgid state.
>
> (c) Exceptions.
>
>> (1) This section shall not prohibit performances of adult entertainment in compliance with section 10-7.
>> (2) This section shall not regulate nudity when the conduct of being nude cannot constitutionally be prohibited by this section

---

[1] The Honorable Beth Phillips, Chief Judge, United States District Court for the Western District of Missouri.

because it is otherwise protected by the United States Constitution or Missouri Constitution.
(3) This section shall not prohibit a mother from breast-feeding her child or expressing breast milk in any public or private location where the mother and child are otherwise authorized to be.

FTN filed an amended complaint, asserting constitutional claims against both ordinances. The parties then agreed to a consent judgment on all counts relating to the September 2015 ordinance. The only remaining claim is FTN's challenge to the March 2016 ordinance. It claims that the ordinance violates the Equal Protection Clause by treating men and women differently—prohibiting women, but not men, from exposing their areolas and nipples in public.[2]

FTN and the City moved for summary judgment on the equal protection challenge. The district court granted summary judgment to the City. Relying on this court's decision in *Ways v. City of Lincoln*, 331 F.3d 596 (8th Cir. 2003), the district court concluded that the gender-based classification was related to the City's legitimate interest in prohibiting nudity and promoting morality. FTN appeals, arguing that the district court erred by misapplying the heightened scrutiny standard

---

[2]Though no one has been arrested or prosecuted under the ordinance, FTN claims the ordinance is unconstitutional as applied, as well as on its face. The City claims the challenge is facial. "[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings or disposition in every case involving a constitutional challenge." *Citizens United v. FEC*, 558 U.S. 310, 331 (2010). The important inquiry is whether the "claim and the relief that would follow . . . reach beyond the particular circumstances of these plaintiffs." *Doe v. Reed*, 561 U.S. 186, 194 (2010). The relief FTN seeks—a declaration that the entire ordinance is unconstitutional—reaches beyond the particular circumstances of these plaintiffs. FTN's claim is facial. *See id. See also Phelps-Roper v. Ricketts*, 867 F.3d 883, 896 (8th Cir. 2017) ("If an as-applied challenge is successful, the statute may not be applied to the challenger, but is otherwise enforceable.").

and ignoring admissible evidence showing that the law is based on impermissible stereotypes.

## II.

This court reviews de novo a grant of summary judgment, viewing the evidence most favorably to the nonmoving party. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Summary judgment is proper if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

The majority of courts considering equal protection challenges have upheld similar laws prohibiting women, but not men, from exposing their breasts. *See e.g.*, *Tagami v. City of Chicago*, 875 F.3d 375, 377, 379–80 (7th Cir. 2017); *United States v. Biocic*, 928 F.2d 112, 115–16 (4th Cir. 1991); *Craft v. Hodel*, 683 F. Supp. 289, 299–301 (D. Mass. 1988); *Tolbert v. City of Memphis*, 568 F. Supp. 1285, 1290 (W.D. Tenn. 1983); *State v. Lilley*, 2019 WL 493721, at *3–5 (N.H. Feb. 8, 2019). *But see Free the Nipple - Fort Collins v. City of Fort Collins*, 916 F.3d 792, 802–05 (10th Cir. 2019) (equal protection challenge to ordinance prohibiting women from exposing nipple likely to succeed on merits); *People v. Santorelli*, 80 N.Y.2d 875, 882–83 (1992) (Titone, J., concurring) (statute prohibiting women from exposing nipple violated Equal Protection Clause).

In *Ways v. City of Lincoln*, this court upheld an ordinance prohibiting "the showing of the female breast with less than a fully opaque covering on any part of the areola and nipple" against an equal protection challenge. *Ways*, 331 F.3d at 599. Assuming, without deciding, that the ordinance was a gender-based classification, this court applied heightened scrutiny, requiring the city to show that the "gender-based classification[ ] serve[s] 'important governmental objectives' and that the statute in question is 'substantially related to the achievement of those objectives.'"

*Id.* at 600, *quoting United States v. Virginia*, 518 U.S. 515, 533 (1996). This court concluded that "the city's interests in preventing the secondary adverse effects of public nudity and protecting the order, morality, health, safety, and well-being of the populace are important" and that the "ordinance is substantially related to those objectives." *Id.*

The ordinance at issue in this case is almost identical to the ordinance in *Ways*.[3] FTN points to three differences to try to distinguish *Ways*. First, the ordinance here does not contain an exception for children under the age of 12 like the ordinance in *Ways*. Second, the ordinance here exempts adult entertainment. FTN contends that this weakens the City's interests. Third, unlike *Ways*, FTN produced evidence suggesting there is no real difference between male and female nipples and that gender stereotypes motivated the discriminatory treatment. These arguments are unpersuasive. The City regulates adult entertainment in a separate ordinance. It still has an interest in regulating nudity in public places. This court's equal protection analysis in *Ways* did not turn on the exceptions in the ordinance or the evidence (or lack thereof) produced by the parties about the similarities or differences between men and women's breasts. The *Ways* equal protection analysis applies to the City's ordinance here.

Because *Ways* is not distinguishable, it controls this panel unless an intervening Supreme Court decision supersedes it. *United States v. Anderson*, 771 F.3d 1064, 1066–67 (8th Cir. 2014) ("It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel. This rule, however, does not apply when the earlier panel decision is cast into doubt by an intervening Supreme Court decision." (internal citations omitted)). FTN argues that *Lawrence v. Texas*, 539 U.S. 558 (2003), and *Sessions v. Morales-Santana*, 137 S. Ct. 1678 (2017), undermine *Ways*.

---

[3]The ordinance in this case requires "a fully opaque covering *of* any part of the areola and nipple," while the ordinance in *Ways* required "a fully opaque covering *on* any part of the areola and nipple." *Ways*, 331 F.3d at 599 (emphasis added).

In *Lawrence*, the Supreme Court held that Texas's sodomy law violated the Due Process Clause because it "furthers no legitimate state interest which can justify its intrusion into the personal and private life of the individual." *Lawrence*, 539 U.S. at 578. FTN contends that, after *Lawrence*, the City's interest in public morality is not a sufficient justification for the gender-based classification. *See id.* at 577 ("[T]he fact that the governing majority in a State has traditionally viewed a particular practice as immoral is not a sufficient reason for upholding a law prohibiting the practice." (*quoting Bowers v. Hardwick*, 478 U.S. 186, 216 (1986) (Stevens, J., dissenting))); *id.* at 583 ("Moral disapproval of a group cannot be a legitimate governmental interest under the Equal Protection Clause . . . ." (O'Connor, J., concurring)). The *Ways* court recognized a number of important governmental interests, not just protecting morality. *Ways*, 331 F.3d at 600. *Lawrence* does not cast doubt on these interests or supersede *Ways*.

In *Morales-Santana*, the Supreme Court struck down an immigration statute under the Due Process Clause. *Morales-Santana*, 137 S. Ct. at 1686. To acquire citizenship under the statute, a foreign-born child's unwed mother had to live in the United States only one year, whereas an unwed father had to live in the United States for ten years. *Id.* at 1686–87. Finding that the gender-based classification relied on outdated stereotypes about gender roles and did not serve important governmental interests today, the Court held that the statute was unconstitutional. *Id.* at 1690–93, 1698. Contrary to FTN's arguments, *Morales-Santana* did not modify the equal protection analysis courts apply to gender-based classifications. Nor does its reasoning undermine *Ways*. The statute in *Morales-Santana* did not pass heightened scrutiny because it was based on "anachronistic" stereotypes about women's domestic roles. *Id.* at 1693. Neither *Ways*, nor this case, involves the same outdated gender stereotypes about the roles of men and women.

This court must follow the holding in *Ways*. *See Anderson*, 771 F.3d at 1066–67. Springfield's ordinance is substantially related to its important

governmental interests in promoting public decency and proscribing public nudity to protect morals, public order, health, and safety. *See Ways*, 331 F.3d at 600. The district court properly granted summary judgment for the City.

* * * * * * *

The judgment is affirmed.

_____