33 P.3d 1166

David NORGORD, Real Party
in Interest/Appellant,

v.

STATE of Arizona ex rel. Thomas J.
BERNING, Attorney for the City
of Tucson, Petitioner/Appellee.

No. 2CA–CV 00–0244.

Court of Appeals of Arizona,
Division 2, Department A.

Sept. 11, 2001.

Review Denied Feb. 12, 2002.

Hirsh, Bjorgaard & Rogers, P.L.C., by David L. Bjorgaard, Tucson, for Real Party in Interest/Appellant.

Michael D. House, Tucson City Attorney, by Laura Brynwood and George W. Bromley, Tucson, for Petitioner/Appellee.

*OPINION*

PELANDER, Judge.

¶1 The Pima County Superior Court (superior court) granted petitioner/appellee the state's petition for special action and reversed a Tucson City Court magistrate's order that had compelled a purported victim of indecent exposure to submit to a defense interview. The superior court concluded that indecent exposure is a "sexual offense" and,

therefore, that it qualifies as a "criminal offense" under A.R.S. §§ 13–4401(6) and 13–4433(A) for victims' rights purposes. Real party in interest/appellant David Norgord challenges that ruling, contending indecent exposure is a victimless crime that does not give rise to victims' rights, specifically the right to refuse a defense interview. Because we disagree with that contention and agree with the superior court's ruling, we affirm.

## BACKGROUND

¶ 2 The state charged Norgord in Tucson City Court with indecent exposure and harassment arising from an incident involving V.[1] Norgord apparently requested an interview with V., who refused pursuant to Arizona's victims' rights laws. Ariz. Const. art. II, § 2.1(A)(5); A.R.S. § 13–4433(A); Ariz. R.Crim. P. 39(b)(11), 17 A.R.S.

¶ 3 Norgord moved to compel the interview pursuant to Rule 15.3, Ariz. R.Crim. P., 16A A.R.S. In granting the motion, the city court magistrate concluded that a "person who observes the alleged [indecent exposure] activity is a witness under th[e] indecent exposure statute" and "is not a victim for purposes of victim's rights." This appeal followed the superior court's reversal of that ruling on special action. We have jurisdiction pursuant to A.R.S. § 12–2101(B). *See State ex rel. Dean v. City Court,* 173 Ariz. 515, 844 P.2d 1165 (App.1992). *See also* Ariz. R.P. Special Actions 8(a), 17B A.R.S.

## STANDARD OF REVIEW

■ ¶ 4 Because the superior court accepted jurisdiction of the state's petition for special action, addressed the merits, and granted relief, we review the determination of the merits. *State v. Johnson,* 184 Ariz. 521, 523, 911 P.2d 527, 529 (App.1994); *Ayala v. Hill,* 136 Ariz. 88, 90, 664 P.2d 238, 240 (App.1983). And, because the superior court's ruling hinged on pure issues of law, we review its legal conclusions de novo. *Johnson. See also Hobson v. Mid–Century Ins. Co.,* 199 Ariz. 525, ¶ 6, 19 P.3d 1241, ¶ 6

(App.2001) (we review statutory interpretation and constitutional issues de novo).

## DISCUSSION

■ ¶ 5 In 1990, the voters of Arizona approved an amendment to the state constitution, the Victims' Bill of Rights, which gives crime victims a panoply of rights, including the right to refuse a defendant's request for an interview. Ariz. Const. art. II, § 2.1(A)(5). Subsequently, the legislature enacted the Victims' Rights Implementation Act (the Act), A.R.S. §§ 13–4401 through 13–4437. 1991 Ariz. Sess. Laws, ch. 229, §§ 1, 7. Both the Victims' Bill of Rights and the Act define "[v]ictim" as "a person against whom the criminal offense has been committed." Ariz. Const. art. II, § 2.1(C); A.R.S. § 13–4401(19). Additionally, unlike the constitutional amendment, the Act defines "[c]riminal offense" as "conduct that gives a peace officer or prosecutor probable cause to believe that a felony or that a misdemeanor involving physical injury, the threat of physical injury or a sexual offense has occurred." § 13–4401(6). The Act, however, does not define "sexual offense." *See* § 13–4401.

¶ 6 Norgord contends indecent exposure is not a sexual offense and, therefore, does not fall within the statutory definition of criminal offense for purposes of victims' rights. § 13–4401(6). Because the indecent exposure charge against Norgord is a misdemeanor that does not involve physical injury or the threat thereof, A.R.S. § 13–1402, we must determine whether that offense constitutes a sexual offense for purposes of § 13–4401(6), thereby permitting V. to refuse an interview pursuant to § 13–4433(A).

■ ¶ 7 "Our primary goal in interpreting statutes is to discern and give effect to legislative intent." *Hobson,* 199 Ariz. 525, ¶ 8, 19 P.3d 1241, ¶ 8. We first consider the language of the statute and, if it is unclear, turn to other factors, including "the statute's context, subject matter, historical background, effects, consequences, spirit, and purpose." *Id. See also Champlin v. Sar-*

---

1. The state does not contend Arizona's victims' rights protections apply to the harassment charge.

*geant,* 192 Ariz. 371, ¶ 15, 965 P.2d 763, ¶ 15 (1998). With respect to context, we consider both the statute in question and the "entire legislative scheme." 2A Norman J. Singer, *Statutes and Statutory Construction,* § 46:05, at 155–56 (6th ed.2000). *See also Bills v. Arizona Property & Cas. Ins. Guar. Fund,* 194 Ariz. 488, ¶ 18, 984 P.2d 574, ¶ 18 (App.1999).

 ¶ 8 Use of the term "sexual offense" in § 13–4401(6), at a minimum, suggests the legislature intended to extend the Act to crimes classified as sexual offenses elsewhere in the criminal code. Indecent exposure is so classified. § 13–1402. That offense is set forth in Title 13, chapter 14, A.R.S., entitled "Sexual Offenses." Additionally, as Norgord noted in city court, a person convicted of indecent exposure for a third or subsequent time must register as a sex offender. A.R.S. § 13–3821(A)(15). Thus, the legislature adequately expressed its intent to classify indecent exposure as a sexual offense. In light of that intent, it would be strikingly incongruous to conclude that the legislature did not consider indecent exposure a sexual offense for purposes of victims' rights. Consequently, we conclude that the phrase "sexual offense" in § 13–4401(6) includes indecent exposure.

¶ 9 *State v. Sandoval,* 175 Ariz. 343, 857 P.2d 395 (App.1993), on which Norgord relies, does not alter our conclusion. The court there did not rule out indecent exposure as a sexual offense. Rather, it held only that sexual intent and sexual motivation are not required elements of indecent exposure. *Id.* at 347, 857 P.2d at 399. *See also* § 13–1402. And, in so holding, Division One of this court compared indecent exposure to other sexual offenses that likewise do not require those elements. *Id. See also* A.R.S. §§ 13–3552 and 13–3558.

¶ 10 In support of his argument, Norgord points to the definitions of "sexual offense" in A.R.S. §§ 13–1415(G)(1) and 13–1420, which also appear in Title 13, chapter 14, but do not include indecent exposure. Both of those statutes, however, expressly define "sexual offense" only for the limited purposes stated therein. Omission of indecent exposure from those statutes only means that that offense

does not trigger human immunodeficiency virus testing, § 13–1415, and that a charge of indecent exposure does not automatically permit a trial court to admit evidence of prior acts under § 13–1420.

¶ 11 Norgord also argues that the maxim *noscitur a sociis* requires us to interpret the phrase "sexual offense" in § 13–4401(6) consistently with the other types of misdemeanors under that subsection that constitute criminal offenses for purposes of victims' rights, specifically conduct involving physical injury or the threat of physical injury. According to Norgord, "sexual offense" must mean conduct "which involve[s] physical sexual injury/contact or the threat of physical sexual injury/contact." We disagree.

 ¶ 12 Under the maxim *noscitur a sociis,* the meaning of uncertain words may be determined by referring to other associated words in the statute. *Yauch v. State,* 109 Ariz. 576, 579, 514 P.2d 709, 712 (1973), *disapproved in part on other grounds, State v. Western,* 168 Ariz. 169, 173 n. 3, 812 P.2d 987, 991 n. 3 (1991). The maxim is a tool of statutory construction that courts may apply to ascertain legislative intent. Singer, *supra,* § 47:16, at 269. Application of *noscitur a sociis* to this case, however, does not compel the result Norgord urges. The commonality between conduct involving physical injury or the threat of physical injury on the one hand and a sexual offense on the other is the traumatic effect those types of conduct may have on the people subjected to them, not the physical nature of the conduct. *See Champlin,* 192 Ariz. 371, ¶ 20, 965 P.2d 763, ¶ 20 (one purpose of Victims' Bill of Rights is to prevent "retraumatization during the pretrial process"). Thus, for purposes of § 13–4401(6), it is not necessary that "sexual offense" include a physical element.

 ¶ 13 Norgord further argues that the rule of lenity compels the conclusion that indecent exposure is not a sexual offense and, therefore, not a criminal offense giving rise to victims' rights. But the rule of lenity applies only when a statute is susceptible to different interpretations or when legislative intent is unascertainable. *State v. Tarango,* 185 Ariz. 208, 210, 914 P.2d 1300, 1302 (1996);

*State v. Nihiser,* 191 Ariz. 199, 201, 953 P.2d 1252, 1254 (App.1997). As noted above, we discern no ambiguity here and have ascertained the legislature's intent through the language and context of § 13–4401(6). Accordingly, we need not resort to the rule of lenity.

¶ 14 In an overarching argument, Norgord also contends indecent exposure does not involve any "victim" as that term is defined in the Victims' Bill of Rights and the Act. Ariz. Const. art. II, § 2.1(C); A.R.S. § 13–4401(19). Specifically, he argues that, because indecent exposure is a victimless crime against only community morals and not any specific person, "there is no person against whom a criminal offense has been committed." We are not persuaded.

¶ 15 The indecent exposure statute provides:

A person commits indecent exposure if he or she exposes his or her genitals or anus or she exposes the areola or nipple of her breast or breasts and another person is present, and the defendant is reckless about whether such other person, as a reasonable person, would be offended or alarmed by the act.

§ 13–1402(A). The statute expressly requires not only that "another person [be] present" but also that "such other person" reasonably "would be offended or alarmed by the act." *See Sandoval,* 175 Ariz. at 346, 857 P.2d at 398; *State v. Whitaker,* 164 Ariz. 359, 361, 793 P.2d 116, 118 (App.1990). Although the statute employs an objective standard— whether a reasonable person in the position of the other person who was present would be offended or alarmed by the defendant's actions—that neither renders indecent exposure a victimless crime nor eliminates the subjective component. *See Sandoval,* 175 Ariz. at 346, 857 P.2d at 398 ("The fact that the [two witnesses] were scared by defendant's conduct itself provides some evidence that a reasonable person would be alarmed by such conduct.").

¶ 16 We also are not swayed by Norgord's argument that the sole aim of prohibiting indecent exposure is to protect community morals.[2] That clearly is one purpose. *City of Tucson v. Wolfe,* 185 Ariz. 563, 564, 917 P.2d 706, 707 (App.1995) (purpose of city ordinance prohibiting female entertainers from exposing nipple and areola was to "maintain a decent society and to protect public decorum, sensibilities and morals"). A community, however, is a collection of individuals. If an act offends or alarms the community, as defined by a reasonable person, it necessarily offends or alarms at least some individuals in that community.

¶ 17 Thus, another purpose of prohibiting indecent exposure is to prevent "the infliction of nudity upon a beholder's moral sensibilities." *Yauch,* 109 Ariz. at 578, 514 P.2d at 711. Criminalizing such behavior can serve dual purposes of preserving community morals and protecting individuals from offense or alarm. Accordingly, we hold that a person who is present during an indecent exposure and who otherwise meets the requirements of § 13–1402 is a victim for purposes of victims' rights.[3]

---

2. The two United States Supreme Court decisions Norgord cites do not persuade us otherwise. *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (enforcement of Indiana's public indecency statute against nude dancing establishments did not violate First Amendment); *Bowers v. Hardwick,* 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986) (upholding Georgia's prohibition of private homosexual sodomy and refusing to recognize fundamental right to engage in such activity). Neither *Barnes* nor *Bowers* involved victims' rights, nor did those decisions address, let alone determine, whether all acts that are considered malum in se are necessarily victimless crimes.

3. Norgord does not argue that V. fails to qualify as a victim because she was not offended or alarmed by his alleged conduct. Accordingly, we do not address that issue. In addition, in view of our conclusion, we do not address the state's alternative argument that, without regard to the Act, V. had the right to refuse an interview solely pursuant to the Victims' Bill of Rights, which neither defines nor limits "criminal offense" and which broadly entitles "a victim of crime" to refuse an interview. Ariz. Const. art. II, § 2.1; *cf. State v. Uriarte,* 194 Ariz. 275, ¶ 19, 981 P.2d 575, ¶ 19 (App.1998) (when constitution, statute, and rules "cannot be reconciled, we give effect to the constitutional guarantee"). *But see* Ariz. Const. art. II, § 2.1(D) (granting legislature authority "to enact substantive and procedural laws to define, implement, preserve and protect the rights guaranteed to victims" by § 2.1).

¶ 18 We find analogous support for our holding in *Champlin.* In that case, Shelley, an adult who might have witnessed the defendant's sexual conduct with a minor, was identified in that same incident as a victim of the crime of public sexual indecency. 192 Ariz. 371, ¶ 22, 965 P.2d 763, ¶ 22. The statute relating to the latter offense, A.R.S. § 13–1403, essentially mirrors the indecent exposure statute, § 13–1402, in that both require (a) conduct in another person's presence and (b) a defendant's recklessness "about whether such other person, as a reasonable person, would be offended or alarmed by the act." *See Whitaker,* 164 Ariz. at 361, 793 P.2d at 118. Although *Champlin* did not squarely address the issue presented here, our supreme court concluded that the defendant was "*not* entitled to interview Shelley regarding conduct Shelley may have witnessed" against the minor because she was a "victim[ ] of the same conduct." 192 Ariz. 371, ¶ 22, 965 P.2d 763, ¶ 22. As the state points out, "[b]y analogy, the definition of 'victim' made applicable to public sexual indecency in *Champlin* is applicable in this case." Thus, V. qualifies as a victim of Norgord's alleged indecent exposure and, as such, is entitled to refuse a defense interview.

¶ 19 We reject Norgord's argument that indecent exposure does not give rise to victims' rights because it may not be compromised under A.R.S. § 13–3981. *State ex rel. Baumert v. Superior Court,* 130 Ariz. 256, 257, 635 P.2d 849, 850 (1981). Driving under the influence of intoxicants also may not be compromised. *Cf. id.* (charge of flying while intoxicated may not be compromised). But it may give rise to victims' rights under certain circumstances. *State ex rel. Romley v. Superior Court,* 184 Ariz. 409, 411, 909 P.2d 476, 478 (App.1995). Thus, whether a charged offense may be compromised is not dispositive of whether it gives rise to victims' rights.

¶ 20 Norgord finally contends that, because V. was the only witness to his alleged conduct, allowing her to refuse his request for an interview curtails his constitutional rights to compulsory process, cross-examination, due process, and fundamental fairness. We disagree. Because Norgord does not explain how or why V.'s refusal to consent to an interview interferes with his right to compulsory process, he has waived that argument. *See* Ariz. R. Civ.App. P. 13(a)(6), 17B A.R.S. (argument "shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor"). As for the alleged violation of Norgord's right to cross-examination, our supreme court previously has rejected that contention. *State v. Riggs,* 189 Ariz. 327, 331–32, 942 P.2d 1159, 1163–64 (1997). We cannot deviate from controlling decisions of our supreme court. *State v. Rosengren,* 199 Ariz. 112, ¶ 26, 14 P.3d 303, ¶ 26 (App.2000).

¶ 21 Finally, V.'s refusal to submit to an interview does not deprive Norgord of due process or fundamental fairness. *See State v. O'Neil,* 172 Ariz. 180, 182, 836 P.2d 393, 395 (App.1991) ("[I]t is well-established that there is neither a federal nor a state constitutional right to pretrial discovery."). Although she apparently was the only eyewitness to Norgord's alleged conduct, the substance of her expected testimony should not be particularly surprising. In all likelihood, V. will testify that Norgord exposed himself in her presence and that she was offended or alarmed by his conduct. Norgord, of course, may cross-examine her on each of those elements, present other evidence to rebut them, and attempt to establish that he was not reckless or that a reasonable person would have been neither offended nor alarmed by his alleged conduct. Thus, we do not view V.'s refusal to submit to a defense interview as such "a serious restriction on the search for truth" that it will prevent a fair trial. *State v. Superior Court,* 186 Ariz. 363, 366, 922 P.2d 927, 930 (App.1996).

¶ 22 The superior court's order is affirmed.

CONCURRING: J. WILLIAM BRAMMER, JR., Presiding Judge and M. JAN FLÓREZ, Judge.